**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| **JAMES ALAN SNYDER, JR.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | **Case No.:**   3:24cv652 |
| **VIRGINIA STATE POLICE,** ) | |
| **SAMUEL MOSS, MICHELLE DEAN,** ) | |
| **RICHARD BOYD, and NORMAN GRAY,** ) | |
| ) | |
| **Defendants.** ) | |

## <u>COMPLAINT</u>

COMES NOW, Plaintiff James Alan Snyder, Jr., by undersigned counsel, and hereby presents this Complaint against Defendants, and moves this Court for judgment against Defendant Virginia State Police, and against Defendants Samuel Moss, Michelle Dean, Richard Boyd and Norman Gray, individually and in their official capacity as police officers for the State of Virginia, on the following grounds:

### PARTIES

1. Plaintiff, James Alan Snyder, Jr., is an adult over the age of 18 and a resident of the Commonwealth of Virginia and domiciled in Louisa County. Plaintiff is a Special Agent (Narcotics) officer for the Virginia State Police Department ("VSPD") and has been employed by Defendant VSPD since August 25, 2006.

2. Defendant VSPD is a state agency of the Commonwealth of Virginia.

3. Defendants Special Agent Michelle Dean, First Seargent Samuel Moss, Major Richard Boyd, and Major Norman Gray were, at the time of the incidents described herein, adult residents of the Commonwealth of Virginia and employed by VSPD.

4. At all relevant times, Defendants Michelle Dean, Samuel Moss, Richard

1

Boyd and Norman Gray were acting in the course and scope of their employment with VSPD; as agents, servants and/or employees of VSPD; and under color of state law pursuant to 42 U.S.C. § 1983.

## JURISDICTION AND VENUE

5. Mr. Snyder claims a due process violation of his liberty interest against Defendants pursuant to 42 U.S.C. § 1983. *See generally*, 28 U.S.C. § 1331; 28 U.S.C. § 1343(a)(4).

6. This Court has federal question subject-matter jurisdiction over Plaintiff's claims arising under 42 U.S.C. § 1983. *See* 28 U.S.C. § 1331 and 28 U.S.C. § 1343.40.

7. This Court has supplemental jurisdiction over Plaintiff's state law claims, to-wit, his claims arising under the Virginia Fraud and Abuse Whistleblower Protection Act ("VWPA"), Va Code Ann. § 2.2-3010, the Virginia and his common-law defamation claims, because his state-law claims are so related to his due process claims that they form part of the same case or controversy.

8. Mr. Snyder is domiciled in Louisa County, Virginia.

9. This Court has personal jurisdiction over Defendants because they have sufficient minimum contacts in Virginia or have otherwise intentionally availed themselves of the Virginia market so as to render the exercise of personal jurisdiction over them by this Court to be consistent with traditional notions of fair play and substantial justice.

10. Venue is appropriate because a substantial part of the acts and/or omissions of Defendants, giving rise to Plaintiff's claims and from which the causes of action arise, occurred in this judicial district. *See* 28 U.S.C. § 1391(b)(2).

**FACTS COMMON TO ALL CAUSES OF ACTIONS**

11.    Mr. Snyder is a Special Agent in the Narcotics Unit for the VSPD and has been employed by VSPD since August 25, 2006.

12. The following lawsuit pivots on Mr. Snyder's removal and reinstatement to Employment with VSPD on May 24, 2023 and October 13, 2023, respectively, and the defamatory and retaliatory statements and actions that occurred surrounding these incidents, culminating in him being placed on the "Brady list."

13.    This entire ordeal began when Mr. Snyder inadvertently left his Agency-issued handgun, a Sig Sauer P320, in a police vehicle and failed to timely report that his handgun had been lost.

14.    Mr. Snyder's misplacing his Agency-issued handgun and failing to report it within 48 hours was not intentional but rather was an inadvertent mistake.  Although the Agency had issued a handgun to Plaintiff, he would occasionally carry a personal handgun that was easier to conceal than his Agency-issued weapon.

15.    While working as a Special Agent in the Narcotics Unit, Plaintiff was often required to drive unmarked agency vehicles. From early August 2022 through early November 2022, Plaintiff changed agency vehicles multiple times.

16.    At some point in late November 2022, Plaintiff realized that he could not locate his Agency-issued handgun.

17.     Despite a rigorous search for his Agency-issued weapon, Plaintiff could not locate it. On December 12, 2022, he reported to Supervisor-First Sergeant Moss that his Agency-issued handgun was missing.

18.    A criminal investigation was initiated regarding the missing weapon, as a potentially stolen gun that same day, and Plaintiff was interviewed in connection with

3

that investigation on December 15, 2022.

19.     Feeling affronted by some of Plaintiff's accusations, while the investigation was in progress, First Seargent Samuel Moss, a former coworker of Plaintiff, retaliated by accusing Plaintiff of lying about misplacing his firearm. Defendant Moss made these assertions to his direct supervisor.

20.     Major Richard Boyd also misrepresented to an internal affairs agent that Plaintiff had lied about misplacing his firearm.

21.     On December 16, 2022, Supervisor-First Sergeant Moss and another employee searched the vehicles that Plaintiff had driven and eventually were able to locate the Agency-issued handgun in one of the vehicles that Mr. Snyder had previously driven.

22.     The criminal investigation was terminated once the Agency-issued handgun was found.

23.     On May 24, 2023, Plaintiff was issued a Group II written notice of disciplinary action for failure to follow instructions or policy, as well as a Group III written notice of disciplinary action with termination effective May 24, 2023 for untruthfulness/misrepresentation of official statements.

24.     Specifically, Plaintiff is alleged to have: 1) violated General Order ADM 11.00, paragraph 7,i, (7) by "Attempting to conceal, divert, or mitigate their true level of culpability in an administrative or criminal investigation" by purportedly making inaccurate statements and misrepresenting the timeline of events related to his missing Department issued handgun during official investigatory interviews; and 2) violated Paragraph 1 of General Order OPR 1.08 and Virginia Code § 18.2-287.5, when he failed to carry his Agency-issued handgun while on duty, and failed to report his Agency-issued handgun as missing within 48 hours of discovering that he could not locate it,

respectively.

25.     On June 22, 2023, Mr. Snyder filed a grievance to challenge his termination. A hearing was held on September 12, 2023 at the Agency's training facility.

26.     In August 2023, while Plaintiff's grievance was still pending, Samuel Moss lodged another complaint against him alleging he failed to document certain encounters he had with a confidential source informant ("CSI") in a CSI report in the LEAMS filing system as required by Department policy.  None of the allegations of failing to do a contact report with a CSI were connected with any criminal activity, active case or investigation; therefore, the charges lodged by Mr. Moss were without merit.

27.     Plaintiff has had a long-standing career with the Virginia State Police, and in his tenure with VSPD he has worked on hundreds of cases involving confidential informants since 2014, with no allegations of misconduct.[1]

28.      On October 13, 2023, the Hearing Officer issued a decision finding that the Agency had not met its burden of proving that Mr. Snyder made intentionally deceptive statements, misrepresentations and/or omissions or statements intended to conceal, divert, or mitigate his true level of culpability in the administrative or criminal investigations as set forth in the Group III Written Notice, vis-à-vis to misplacing his Agency-issued weapon.  See October 13, 2023 Decision, Case number: 11993, affixed hereto as Exhibit 2.

29.     The Agency's issuance of a Group III written notice of disciplinary action with termination for untruthfulness/misrepresentation of official statements was rescinded, and the Agency was ordered to reinstate Mr. Snyder to the same position prior

---

[1] Plaintiff appealed the false allegations in Mr. Moss's Complaint to Captain Brian K. Blackman on February 8, 2024.  See Exhibit 1.

to his removal, or an equivalent position, provide back pay and benefits, *inter alia*.

### MR. SNYDER'S REINSTATEMENT, CONSEQUENT RETALIATION, AND CONTINUED DEFAMATION

30.     Plaintiff returned to work in November 2023 but was not assigned to the position he occupied prior to his termination as directed by the hearing officer. Instead, Mr. Snyder was assigned to a position in Appomattox, VA which is nearly ninety (90) miles from where Plaintiff lives in Louisa County, Virginia and more than ten (10) miles from where his previous position was located in Louisa, Virginia. This significant commute to work caused quite a strain on Plaintiff, and he requested to be transferred. Although there was a position open in Richmond, Virginia, Plaintiff was directed to work a position in Culpeper, Virginia at a BCI facility.

31.     Despite the fact that Plaintiff had been found innocent of any allegations of lying or misrepresentation related to misplacing his handgun, his peers and co-workers continued to spread malicious rumors about him that they knew to be false.

32.     Sam Moss misrepresented to the Assistant Commonwealth Attorney, Tonya Powell, that he was terminated for lying during a formal investigation.

33.     Special Agent Michelle Dean also misrepresented to the DEA and Assistant US Attorney ("AUSA") Olivia Norman that Plaintiff was terminated for lying. Michelle Dean is the only point of contact from Plaintiff's office who would have had this information.

34.     Comparing each of these Defendants' statements that Plaintiff "was lying" about his misplaced weapon to the record itself (i.e., the Hearing Officer's formal determination that Plaintiff did not intentionally make deceptive statements, misrepresentations and/or omissions or statements intended to conceal, divert, or

6

mitigate his true level of culpability in the administrative or criminal investigations) demonstrates that that Defendants' statements were materially false, they knew these statements to be false, and were nonetheless published with actual malice or deliberate indifference.

35. The comments by Defendants falsely ascribe to Mr. Snyder qualities of deceptiveness, duping, and dishonesty — all characteristics that would adversely affect his fitness to be a law enforcement professional and to conduct the business of a Special Agent, not only in the State of Virginia, but anywhere in the United States.

36. Plaintiff notified the Commonwealth Attorney's office, via the person of Nellie C. Black, on December 4, 2023, that he had been cleared of any wrongdoing related to misrepresenting the timeframe around misplacing his Agency-issued weapon, and that each of the Defendants should desist publishing the false and defamatory statements, but his demands for retraction were ignored.

### *THE BRADY EFFECT*

37. The final blow came in early January 2024, when Plaintiff was informed by Tonya Powell that he had been placed on the "Brady List." *Brady v. Maryland*, 373 U.S. 83 (1963).

38. *Brady* and its progeny describe the duties of prosecutors to provide exculpatory evidence to criminal defendants. The root of these duties originates in the Due Process Clause of the U.S. Constitution. *Brady* not only reshaped criminal prosecution in America but also affected the culture and day-to-day work of law enforcement.

39. Brady lists are lists generated and maintained by prosecutor offices that list law enforcement agents, investigators, and officials who have engaged in dishonesty. A

law enforcement officer that has lied in an official capacity may be placed on a Brady list. Such officers are known throughout the Commonwealth of Virginia as not credible witnesses and whose involvement in a case may undermine or altogether jeopardize the integrity of a prosecution.

40.     Placement upon a Brady list is often the end of the road for active law enforcement employees.  Careers have been halted in their tracks due to placement upon a Brady list.

41.     Officers on Brady lists, derogatorily referred to as "Brady cops", are disfavored by employers, looked upon negatively within the industry, and are metaphorically tarred and feathered due to placement upon the list.  Placement upon a Brady list is a professional declaration of an employee's moral turpitude.

42.     Plaintiff contacted Tonya Powell and Chris Dorsey, Attorneys for the Commonwealth, on January 18, 2024 and informed them that he had been cleared of all charges related to misplacing his Agency-issued weapon and any allegations that he had been deceptive or dishonest during the investigation regarding the same.  Therefore, his placement on the Brady list was improper.  As of the date of this filing, Plaintiff's pleas to be removed from the Brady list, and have his name cleared, have been ignored.

## COUNT I:  DUE PROCESS DEPRIVATION OF LIBERTY INTEREST IN VIOLATION OF 42 U.S.C. § 1983

43.     Mr. Snyder incorporates by reference herein the preceding paragraphs of this Complaint.

44.     As a public employee, Plaintiff is protected by the Fourteenth Amendment and: (1) the liberty "to engage in any of the common occupations of life," *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 572 (1972) (quoting *Meyer v. Nebraska*, 262 U.S.

390, 399 (1923)); and (2) the right to due process "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him," *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971); *see also Paul v. Davis*, 424 U.S. 693, 701, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976) (explaining that an individual's liberty interest in his reputation is only sufficient "to invoke the procedural protection of the Due Process Clause" if combined with "some more tangible interest[] such as employment").

45.    By publishing verifiably false information to third parties, and then subsequently placing Plaintiff on a Brady's list, Plaintiff's liberty interest to maintain employment has been implicated in an adverse way because he is being deprived of the freedom to take advantage of other employment opportunities. *Johnson v. Morris,* 903 F.2d 996, 999 (4th Cir. 1990) (a Fourteenth Amendment "liberty interest is implicated by public announcement of reasons for an employee's discharge.").

46.    To state a liberty interest claim under the Due Process Clause, a plaintiff must allege that the charges against him: (1) placed a stigma on his reputation; (2) were made public by the employer; (3) were made in conjunction with his termination or demotion; and (4) were false.  See *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 172 n.5 (4th Cir. 1988).

47.    In this case Defendants and their agents willfully and maliciously published to the public numerous false factual statements (i.e., not opinions) concerning Plaintiff in connection with misplacing his Agency-issued firearm and his consequent termination.

48.    Due to the acts and/or omissions of the Defendants, including, but not limited to, Mr. Moss's, Mr. Boyd's, and Ms. Dean's numerous malicious and false statements to members of the public concerning Plaintiff's personal and professional character, work performance, fitness to perform the duties of his employment, and

credibility, and the circumstances surrounding Mr. Snyder's May 24, 2023 termination from employment, Plaintiff's honor, integrity, name, and reputation were damaged.

49.   This damage has created a stigma limiting Mr. Snyder's future employment opportunities, detrimentally affecting his position in the community and his professional field and damaging his personal and professional reputation, such that prospective employers in the law enforcement field would not consider hiring him.

50.   Defendants intentionally failed to provide Mr. Snyder sufficient opportunity to respond to the numerous false statements and allegations levied against him, or otherwise provide him with an appropriate hearing or procedural process by which he could seek to clear his name.

51.   At all times, Defendants acted to create and disseminate a false and defamatory impression regarding Mr. Snyder in connection with his position as a Special Agent, as well as the circumstances surrounding his termination from employment, such that his liberty interests were deprived.

52.   Any proffered justification by Defendants for their conduct and/or Mr. Snyder's termination, which was rescinded, is pretextual and false.

53.   As a direct and proximate result of Defendants' actions, Mr. Snyder has suffered and will continue to suffer pecuniary loss, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary loss.

**COUNT II:  DEFAMATION (COMMON LAW)**

10

54.     Mr. Snyder incorporates by reference herein the preceding paragraphs of this Complaint.

55.     Under Virginia law, the elements of tort defamation are:  1) publication; 2) of an actionable statement, and 3) intent.  *Wilson v. Miller Auto Sales, Inc.*, 47 Va. Cir. 153, 161 (Winchester 1998).

56.     Defendants defamed Plaintiff by publishing multiple false statements of fact of or concerning Plaintiff, in order to inflict harm on Plaintiff, destroy his reputation and undermine his ability to carry out his duties as a VSPD Special Agent.

57.     The statements made by Defendants were provably false, and Defendants must have known of their falsity, as Plaintiff had been cleared of any wrongdoing and reinstated to his position for any allegation that he misrepresented himself or was deceptive during the criminal investigation regarding his Agency-issued weapon.

58.     These false allegations about Plaintiff lying had the intended effect that Defendants knew they would. Accusing Plaintiff of being deceptive ultimately led Plaintiff to being removed from his position, and even after reinstatement he was assigned to a less prestigious position in a faraway location, and placed on the Brady list — which has impugned his reputation in numerous ways.

59.     Defendants' statements were not privileged because their defamatory words were spoken with common-law malice.  *Jarrett v. Goldman*, 67 Va. Cir. 361 (2005) (citing *Smalls v. Wright,* 241 Va. 52, 55 (1991)); *see also Balderson v. McNamara*, 49 Va. Cir. 254 (1999) ("The defendants cannot rely on immunity doctrines to shield them from liability for intentional torts committed with malice.").  Defendants developed a malice against Plaintiff based upon his earnings. Plaintiff has a side career as a realtor.

11

Defendants seemingly obsessed over the revenue that Plaintiff generated as a realtor, his personal purchases, and how much time he spent as a realtor. Upon information and belief, Defendants investigated Plaintiff to ascertain his earnings and activities outside of law enforcement and were frustrated by the lack of information they received. This strange fixation persisted on a month-by-month basis leading to the acts described above.

60.    Defendants are not immune from suit as governmental employees because their defamatory statements were made in bad faith (*See Harlow v. Clatterbuck*, 230 Va. 490 (1986)) and deliberate indifference to the fact that they were false and could cause extreme harm to Plaintiff and his career.

61.    As a direct and proximate result of the actions of Defendants, Mr. Snyder has suffered and will continue to suffer damage to his personal and professional reputation in the community. Plaintiff has also suffered humiliation, embarrassment, mortification, shame, vilification, ridicule, disgrace, scandal, financial loss, and has been hampered in the conduct of his business and affairs.

62.    At all times material hereto, Defendants engaged in these practices with malice or reckless indifference to the federally protected rights of Mr. Snyder, so as to support an award of punitive damages.

## COUNT III:  DEFAMATION *PER SE*

63.    Mr. Snyder incorporates by reference herein the preceding paragraphs of this Complaint.

64.    Defendants defamed Plaintiff by publishing multiple false statements of fact of or concerning Plaintiff, in order to inflict harm on Plaintiff, destroy his reputation and undermine his ability to carry out his duties as a Virginia State Special Agent.

65.    The statements made by Defendants were provably false, and Defendants

must have known of their falsity, as Plaintiff had been cleared of any wrongdoing and reinstated to his position for any allegation that he misrepresented himself or was deceptive during the criminal investigation regarding his Agency-issued weapon.

66.    These false allegations about Plaintiff lying had the intended effect that Defendants knew they would. Accusing Plaintiff of being deceptive ultimately led Plaintiff to being removed from his position, and even after reinstatement he was assigned to a less prestigious position in a faraway location, and placed on the Brady list — which has impugned his reputation in numerous ways.

67.    The false statements made by Defendants also impute to Plaintiff an unfitness to perform his duties as a law enforcement professional, or a lack of integrity in the discharge of his duties, and thus prejudices him in maintaining and securing employment and goodwill in his profession and trade. Indeed, at the time of this filing many third-parties believe Plaintiff to be deceptive, lacking in ethics, integrity and veracity, and also possessing a serious want of judgment.

68.    Defamatory words that prejudice a person in his or her profession or trade are actionable as defamation *per se*. *Fuste v. Riverside Healthcare Association, Inc.*, 265 Va. 127, 132 (2003).

69.    Defendants' statements were not privileged because their defamatory words were spoken with common-law malice. *Jarrett v. Goldman*, 67 Va. Cir. 361 (2005) (citing *Smalls v. Wright,* 241 Va. 52, 55 (1991)); *see also Balderson v. McNamara*, 49 Va. Cir. 254 (1999) ("The defendants cannot rely on immunity doctrines to shield them from liability for intentional torts committed with malice."). Defendants developed a malice against Plaintiff based upon his earnings.  Plaintiff has a side career as a realtor. Defendants seemingly obsessed over the revenue that Plaintiff generated as a realtor, his

13

personal purchases, and how much time he spent as a realtor. Upon information and belief, Defendants investigated Plaintiff to ascertain his earnings and activities outside of law enforcement and were frustrated by the lack of information they received. This strange fixation persisted on a month-by-month basis leading to the acts described above.

70. Defendants are not immune from suit as governmental employees because their defamatory statement were made in bad faith (*See Harlow v. Clatterbuck*, 230 Va. 490 (1986)) and deliberate indifference to the fact that they were false and could cause extreme harm to Plaintiff and his career.

71. As a direct and proximate result of the actions of Defendants, Mr. Snyder has suffered and will continue to suffer damage to his personal and professional reputation in the community. Plaintiff has also suffered humiliation, embarrassment, mortification, shame, vilification, ridicule, disgrace, scandal, financial loss, and has been hampered in the conduct of his business and affairs.

72. At all times material hereto, Defendants engaged in these practices with malice or reckless indifference to the federally protected rights of Mr. Snyder, so as to support an award of punitive damages.

## COUNT IV: RETALIATION UNDER THE VIRGINIA FRAUD AND ABUSE WHISTLEBLOWER PROTECTION ACT, Va Code Ann. § 2.2-3010, *et seq.*

73. Virginia's Fraud and Abuse Whistleblower Protection Act ("VWPA"), Va Code Ann. § 2.2-3010.1(A). *et seq.*, prohibits an employer from discharging, threatening, or otherwise discriminating or retaliating against a whistle blower because the whistle blower is requested or subpoenaed by an appropriate authority to participate in an investigation, hearing, or inquiry by an appropriate authority or in a court action.

74. The VWPA defines "whistleblower" as "an employee who witnessed …

14

wrongdoing ... and demonstrates by clear and convincing evidence that she is about to make a good faith report of ... the wrongdoing to one of the employee's superiors, an agent of the employer, or an appropriate authority." Va. Code Ann. § 2.2-3010.

75.    "'Wrongdoing' means a violation, which is not of a merely technical or minimal nature, of a federal or state law or regulation, local ordinance, or a formally adopted code of conduct or ethics of a professional organization designed to protect the interests of the public or employee." Defendants committed "wrongdoing" by engaging in the actions set forth above.

76.    Plaintiff is a "whistleblower" within the meaning of the VWPA because he reported this wrongdoing in good faith to his superiors and/or agents as part of the criminal investigation that occurred in December 2022.

77.    Plaintiff was retaliated against by Defendants for making this disclosure. This retaliation consisted of: being terminated, having an additional complaint filed against him, being transferred to a position ninety miles from his home, and being placed on a Brady list for a false misrepresentation made against him by several of his professional peers and coworkers.

79.    At all times material hereto, Defendants engaged in retaliatory practice or practices with malice or reckless indifference to the federally protected rights of Plaintiff so as to support an award of liquidated damages.

80.    As an actual and proximate cause of Defendants actions, Mr. Snyder has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss. Mr. Snyder has also suffered damage to his personal and professional reputation in the community, humiliation, embarrassment, mortification, shame, vilification, ridicule,

15

disgrace, scandal, and has been hampered in the conduct of his business and affairs.

**WHEREFORE** Plaintiff James Alan Snyder, Jr. prays for judgment against Defendants Samuel Moss, Michelle Dean, Richard Boyd and Norman Gray, jointly and severally, consistent with these allegations, and requests that the Court award him general damages in the amount of Two Million Dollars ($2,000,000.00) and compensatory and punitive damages in the amount of Two Million Dollars ($2,000,000.00), together with pre-judgment interest from the date of the statements, as well as incidental and consequential costs associated herewith, including attorneys' fees and such other relief as a competent Court would deem appropriate.

**<u>JURY TRIAL RESPECTFULLY REQUESTED FOR ALL MATTERS UPON</u>**

**<u>WHICH A JURY TRIAL MAY BE REQUESTED</u>**

Respectfully submitted,

**JAMES ALAN SNYDER, JR.**

By: /s/ Thomas E. Strelka
Thomas E. Strelka, Esq. (VSB #75488)
L. Leigh Rhoads, Esq. (VSB #73355)
VIRGINIA EMPLOYMENT LAW
4227 Colonial Ave. SW
Roanoke, VA 24018
(504) 283-0802 – Telephone
(888) 338-0125 – Fax
thomas@vaemployment.law
leigh@vaemployment.law

*Counsel for Plaintiff*

16