IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JAMES ALAN SNYDER, JR.,    )
      Plaintiff,       )
               )
      v.           )      Civil Action No. 3:24-CV-652 (RCY)
               )
VIRGINIA STATE POLICE, *et al.*,    )
      Defendants.    )
_____)

## <u>MEMORANDUM OPINION</u>

This is a procedural due process and defamation action in which Plaintiff alleges a procedural due process deprivation of his liberty interest in violation of 42 U.S.C. § 1983 (Count I), defamation in violation of Virginia common law (Count II), defamation *per se* in violation of Virginia common law (Count III), and retaliation under Virginia's Fraud and Abuse Whistleblower Protection Act ("VFAWPA") (Count IV). Plaintiff James Alan Snyder, Jr. ("Plaintiff") brings this action against Defendant Virginia State Police ("VSP") and against Defendants Special Agent Michelle Dean ("Dean"), First Sergeant Samuel Moss ("Moss"), Major Richard Boyd ("Boyd"), and Major Norman Gray ("Gray," collectively the "Individual Defendants") in their individual and official capacities as employees of the VSP. This matter is presently before the Court on Defendants' Motion to Dismiss Plaintiff's Complaint Pursuant to Rules 12(b)(1) and 12(b)(6) ("Motion to Dismiss"), ECF No. 15. The Motion to Dismiss has been fully briefed, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated herein, the Court will grant Defendants' Motion to Dismiss.

# I. FACTUAL ALLEGATIONS[1]

Plaintiff, a resident of Louisa County, Virginia, is a Special Agent in the Narcotics Unit for Defendant Virginia State Police ("VSP"). Compl. ¶ 11, ECF No. 1. The Individual Defendants are also employees of the VSP. *Id*. ¶ 3. Plaintiff has had a long-standing career with the VSP since 2006, without any incidents of misconduct. *Id*. ¶¶ 11, 27. This changed in late November 2022, when Plaintiff was unable to locate his missing agency-issued handgun. *Id*. ¶ 16.

## A. The Incident and Investigation

In his capacity as Special Agent in the Narcotics Unit, Plaintiff was provided with an agency-issued handgun, a Sig Sauer P320 firearm. *Id*. ¶ 14; Compl. Ex. 3 at 2, ECF No. 1-3 (hereinafter "Hearing Officer Decision").[2] However, instead of carrying this agency-issued handgun, Plaintiff would occasionally carry his personal handgun, finding it easier to conceal. Compl. ¶ 14. Plaintiff's duties as Special Agent included driving unmarked agency vehicles, which required him to switch agency vehicles "multiple times" from early August 2022 to November 2022. *Id*. ¶ 15. During this period, one of these vehicle exchanges was between Plaintiff and his supervisor, Defendant First Sergeant Moss, on September 9, 2022. Hearing Officer Decision 3. Unbeknownst to Plaintiff and Defendant Moss at the time, Plaintiff left his agency-issued handgun under the driver's seat of the vehicle. *Id*.

---

[1] When deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court "accept[s] as true the plaintiff's well-pleaded allegations and views all facts and draws all reasonable inferences in the light most favorable to plaintiff." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Such a standard, however, does not require accepting any unreasonable inferences or a plaintiff's legal conclusions. *Id.* Additionally, a court may consider any documents attached to the complaint. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). Applying these standards, the Court construes the facts in the Complaint, including any attached documents, as follows. At the motion to dismiss stage, a court may consider the face of the complaint, documents attached to the complaint, documents attached to the motion to dismiss that are integral to the complaint and are authentic, and matters of public record subject to judicial notice. *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). These same principles apply to a Rule 12(b)(1) facial challenge. *Beck v. McDonald*, 848 F.3d 262, 269–70 (4th Cir. 2017).

[2] The Court utilizes the pagination assigned by the CM/ECF system for the Complaint's exhibits.

In late November 2022, Plaintiff realized that his agency-issued handgun was missing. Compl. ¶ 16. Thereafter, Plaintiff began a "rigorous search" for the firearm, which included contacting another Special Agent with whom Plaintiff had exchanged his vehicle during this time.[3] *Id*. ¶ 17; Hearing Officer Decision 3. On November 29, 2022, Plaintiff informed the Special Agent and a Senior Special Agent that he intended to search his home the following weekend before filing a report for the missing handgun to Defendant Moss. Hearing Officer Decision 3. Ultimately, on December 12, 2022 (approximately two weeks later), Plaintiff reported to Defendant Moss that his handgun was missing. Compl. ¶ 17. Later that day, Plaintiff and Defendant Moss searched Defendant Moss's vehicle, but were unable to locate the missing firearm. Hearing Officer Decision 4.

Accordingly, on December 12, 2022, a criminal investigation was initiated regarding Plaintiff's missing agency-issued firearm as "a potentially stolen gun." Compl. ¶ 18. The next day, Defendant Moss interviewed Plaintiff as part of this investigation. Compl. ¶ 18. On December 16, 2022, Defendant Moss found the missing firearm in his vehicle upon a subsequent search and terminated the criminal investigation. *Id*. ¶¶ 21–22. Defendant Moss interviewed Plaintiff a second time regarding the incident on February 21, 2023. Hearing Officer Decision 4.

Ultimately, on May 24, 2023, Plaintiff was issued two written notices of disciplinary action regarding the incident. Compl. ¶ 23. The first notice, a Group II notice,[4] charged Plaintiff with

---

[3] Plaintiff did not search Defendant Moss's vehicle during this "rigorous search." *See* Hearing Officer Decision at 3.

[4] Plaintiff's Group II notice cited a violation of Virginia Code § 18.2-287.5, which requires a lost firearm to be reported to "a local law-enforcement agency or the [VSP] within 48 hours after such person discovers the loss." Va. Code Ann. § 18.2-287.5; Hearing Officer Decision at 10. The notice also cited a violation of the VSP's General Order OPR 1.08, ¶ 1, which directs agents "while on duty, . . . [to] carry a Department-issued handgun." Hearing Officer Decision at 10–11.

failure to follow instructions and policy.  *Id*.  The second notice, a Group III notice,[5] terminated Plaintiff's employment, effective May 24, 2023, for untruthfulness and misrepresentation of official statements.  *Id*.  On June 22, 2023, Plaintiff timely filed a grievance to challenge his termination, which led to a hearing held by the Commonwealth of Virginia's Department of Human Resource Management Office of Employment Dispute Resolution Hearing Officer, and a subsequent decision was issued on October 13, 2023.  Compl. ¶¶ 25, 28; *see* Hearing Officer Decision.

The Hearing Officer ultimately decided to uphold the Group II written notice for failure to follow instructions or policy with regards to not maintaining the agency-issued firearm on Plaintiff's person.  Hearing Officer Decision 13.  However, the Hearing Officer rescinded Plaintiff's "Group III written notice of disciplinary action with termination for untruthfulness/misrepresentation of official statements." Compl. ¶ 28.  In accordance with this decision, the VSP was instructed to fully reinstate Plaintiff to his former position and provide him all back pay and back benefits from his period of removal.  *Id*. ¶ 29.

## B. Plaintiff's Reinstatement

In November 2023, following the Hearing Officer's decision, Plaintiff was given a position in Appomattox, Virginia.  Compl. ¶ 30.  Plaintiff was not reinstated to the same position he previously held prior to his termination in Louisa County, Virginia, as instructed by the Hearing Officer.  *Id*.  Accordingly, Plaintiff requested to be transferred and was subsequently placed in Culpeper, Virginia.  *Id.*

---

[5] Plaintiff's Group III notice cited a violation of the VSP's General Order ADM 11.00, ¶ 7, i., (7), for "[a]ttempting to conceal, divert, or mitigate their true level of culpability in an administrative or criminal investigation."  Compl. ¶ 24.  The written notice describes Plaintiff as "misrepresent[ing] the timeline of events related to his missing Department issued handgun during official interviews."  *Id*.

During this time, and despite the Hearing Officer decision, Plaintiff's coworkers and peers spread "malicious rumors" about him. *Id*. ¶ 31. Specifically, Defendants Moss and Dean informed Assistant Commonwealth Attorney, Tonya Powell, and Assistant United States Attorney, Olivia Norman, respectively, of Plaintiff's termination for lying during a formal investigation. *Id*. ¶¶ 32–33. In fear of being viewed as deceptive or dishonest as a result of Defendants' comments, Plaintiff contacted Nellie Black of the Commonwealth Attorney's office to report the Hearing Officer's official rescission of the Group III notice and demand that Defendants desist in making any misrepresentations regarding his character. *Id*. ¶ 36. Plaintiff did not receive a response regarding his requests for retraction. *Id*.

### C. Plaintiff's Placement on the *Brady* List

Later, in early January 2024, Assistant Commonwealth Attorney Tonya Powell informed Plaintiff that he had been placed on the office's "*Brady* List." *Id*. ¶ 37. "*Brady* Lists" are maintained by prosecutor offices and list members of law enforcement who have "lied in an official capacity." *Id*. ¶ 39. The purpose of these lists is to provide notice to prosecutors of law enforcement officers who are credibility risks and who may hinder the integrity of a prosecution. *Id*. Plaintiff describes the effect of a police officer, like Plaintiff, being placed on this list as "the end of the road for active law enforcement employees." *Id*. ¶ 40. Termed "*Brady* cops," these officers face negative perceptions from coworkers and prosecutors and are effectively "tarred and feathered." *Id*. ¶ 41.

On January 18, 2024, Plaintiff contacted Tonya Powell and fellow prosecutor Chris Dorsey to inform them of the Hearing Officer's decision regarding his alleged dishonesty in his official capacity. *Id*. ¶ 42. Nonetheless, Plaintiff's name remains on the Commonwealth Attorney's office's "*Brady* list." *Id*.

## II. RELEVANT PROCEDURAL POSTURE

Plaintiff filed his Complaint on September 13, 2024.  *See* Compl., ECF No. 1.  Therein, Plaintiff named Defendants Michelle Dean, Samuel Moss, Richard Boyd, Norman Gray, and the Virginia State Police ("VSP") (collectively "Defendants").  *Id*.  On December 30, 2024, Defendants collectively filed the instant Motion to Dismiss pursuant to 12(b)(1) and 12(b)(6), Mot. Dismiss, ECF No. 15, and accompanying Memorandum in Support thereof, Mem. Supp., ECF No. 16.

On January 27, 2025, Plaintiff timely filed a Memorandum in Opposition to Defendants' Motion to Dismiss, Resp. Opp'n, ECF No. 20, and on February 3, 2025, Defendants filed their Reply, ECF No. 21, rendering the matter ripe for review.

## III. STANDARD OF REVIEW

### A. Rule 12(b)(1) Standard

A motion to dismiss under Rule 12(b)(1) tests a court's subject matter jurisdiction over a claim.  Motions under Rule 12(b)(1) attack jurisdiction in one of two ways:  facially or factually. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).  On a facial attack, the movant argues that the complaint fails on its face to allege facts on which subject matter jurisdiction can be based. *Id.*  In such a case, "the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration."  *Id.* (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)).  So, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction."  *Id.*  A factual attack on jurisdiction, on the other hand, challenges the factual allegations underlying the assertion of jurisdiction.  *Id.*  In either circumstance, "the burden of proof on a Rule 12(b)(1) motion is on the party asserting that subject matter jurisdiction exists," typically the plaintiff.  5B Charles A.

Wright, Arthur R. Miller, & A. Benjamin Spencer, *Federal Practice & Procedure* § 1350 (4th ed. 2024); *see Moore v. Gregory*, 2024 WL 1774819, at *4 (E.D. Va. Apr. 24, 2024) (citing *Piney Run Pres. Ass'n v. Comm'rs of Carroll Cnty.*, 523 F.3d 453, 459 (4th Cir. 2008)). A court may grant a Rule 12(b)(1) motion and grant the plaintiff leave to amend, but a Rule 12(b)(1) dismissal without leave to amend is proper when the pleader "cannot truthfully amend" to cure the jurisdictional defect. Wright, Miller, & Spencer, *supra*, § 1350.

### B. Rule 12(b)(6) Standard

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint." *Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023) (quoting *Republican Party of N. Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). A Rule 12(b)(6) motion "is not a procedure for resolving . . . contest[s] between the parties about the facts or the substantive merits of the plaintiff's case." Wright, Miller, & Spencer, *supra*, § 1356. Federal Rule of Civil Procedure 8 only requires that a complaint set forth "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," "detailed factual allegations" are not required in order to satisfy the pleading requirement of Federal Rule 8(a)(2). *Id.* (citations omitted). The plaintiff's well-pleaded factual allegations are assumed to be true, and the complaint is viewed in the light most favorable to the plaintiff. *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). All reasonable inferences that can be drawn from the complaint are drawn in the plaintiff's favor. *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020).

However, to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Labels and conclusions," a "formulaic recitation of the elements," and "naked assertions" without factual enhancement are insufficient. *Id.* Ultimately, though, "on a Rule 12(b)(6) motion, the burden lies with the movant to show entitlement to dismissal." *Ziegler v. Dunn*, 2024 WL 761860, at *2 (E.D. Va. Feb. 23, 2024) (citing Wright, Miller, & Spencer, *supra*, § 1357).

If a Rule 12(b)(6) motion is granted, the dismissal generally is not with prejudice, because a district court is normally to "give the plaintiff leave to file an amended complaint to see if the shortcomings of the original document can be corrected." Wright, Miller, & Spencer, *supra*, § 1357. However, a Rule 12(b)(6) dismissal without leave to amend is appropriate where it appears a plaintiff cannot cure the defect, such that permitting amendment would be futile. *Cozzarelli v. Inspire Pharms., Inc.*, 549 F.3d 618, 630 (4th Cir. 2008).

## IV. DISCUSSION

Plaintiff brings four claims against Defendant VSP and the Individual Defendants, in both their official and individual capacities. Specifically, Plaintiff brings a § 1983 claim alleging a due process violation of his liberty interest (Count I), a defamation claim under Virginia common law (Count II), a defamation *per se* claim under Virginia common law (Count III), and a claim alleging

retaliation in violation of the Virginia Fraud and Abuse Whistleblower Protection Act ("VFAWPA"), Virginia Code § 2.2-3010, *et seq* (Count IV). *See generally* Compl.

Defendants collectively move this Court to dismiss all counts on multiple grounds, including sovereign immunity and qualified immunity. Plaintiff disagrees and argues that Defendants are not entitled to sovereign or qualified immunity because Defendant VSP exceeded the scope of its governmental function and because the Individual Defendants acted intentionally and recklessly. Resp. Opp'n 9–10.

The Court will first address Plaintiff's § 1983 claim against Defendant VSP and the Individual Defendants in their official capacities, before addressing the § 1983 claim against the Individual Defendants in their personal capacities. The Court will then address the remaining state law claims against Defendants.

### A. Plaintiff's § 1983 Claims Against Defendant VSP and the Individual Defendants

Section 1983 creates a cause of action to "deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citing *Carey v. Piphus*, 435 U.S. 247, 254-257 (1978)). All causes of action under § 1983 require a plaintiff to allege "(1) the deprivation of a right secured by the Constitution or a federal statute; (2) by a person; (3) acting under color of state law." *Campbell v. Florian*, 972 F.3d 385, 392 n.5 (4th Cir. 2020) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).

Defendants raise several arguments with respect to Plaintiff's § 1983 claim. The Court begins its analysis with the following, as they are dispositive: (1) whether Defendant VSP and the Individual Defendants, in their official capacity, are immune from suit under § 1983 because they

are entitled to sovereign immunity, Mem. Supp. 9; and (2) whether the Individual Defendants, in their personal capacity, are entitled to qualified immunity. *Id.* at 12.

    1. Sovereign Immunity

    Sovereign immunity is a jurisdictional issue. *See Rsch. Triangle Inst. v. Bd. of Governors*, 132 F.3d 985, 987, 990 (4th Cir. 1997). State sovereign immunity protects the state from legal actions "for damages and from suits in equity to restrain governmental action or to compel such action." *All. to Save the Mattaponi v. Virginia*, 621 S.E.2d 78, 96 (Va. 2005) (first citing *Hinchey v. Ogden*, 307 S.E.2d 778, 781 (Va. 2000); and then citing *Va. Bd. of Med. v. Va. Physical Therapy Ass'n*, 413 S.E.2d 59, 63 (Va. 1991)). "This immunity extends to state agencies such as VSP . . . in addition to the state itself." *Saphilom v. Fairfax Cnty. Police*, 2024 WL 4863296, at *4 (E.D. Va. Nov. 21, 2024) (first citing *Passaro v. Virginia*, 935 F.3d 243, 248 (4th Cir. 2019); and then citing *Carpenters Pension Fund of Balt. V. Md. Dep't Health & Mental Hygiene*, 721 F.3d 217, 220 (4th Cir. 2013)).

    "A claim against a state agency in federal court may overcome state sovereign immunity in one of three ways: (1) Congress abrogating state immunity; (2) a state waiving its sovereign immunity; or (3) a plaintiff seeking only prospective or injunctive relief against a state agent." *Jones v. Va. Commonwealth Univ.*, 2021 WL 51542, at *3 (E.D. Va. Jan. 6, 2021) (first citing *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001); then citing *Edelman v. Jordan*, 415 U.S. 651, 673 (1974); and then citing *Ex parte Young*, 209 U.S. 123, 159–60 (1908)).

    As an initial matter, Congress has not abrogated a state's immunity against a 42 U.S.C. § 1983 action. *Id.* (first citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65 (1989); and then citing *Herron v. Va. Commonwealth Univ.*, 366 F. Supp. 2d 355, 363–64 (E.D. Va. 2004)). Neither has Virginia. *Id.* Under Virginia law, "a clear statement is required to waive state sovereign

immunity," *Passaro*, 935 F.3d at 248 (first citing *Coll. Sav. Bank v. Fl. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666,676 (1999); and then citing *Ligon v. Cnty. of Goochland*, 689 S.E.2d 666, 670 (Va. 2010)), and "[o]nly Virginia's General Assembly may abrogate Virginia's sovereign immunity." *Saphilom*, 2024 WL 4863296, at *4 (citing *All. to Save the Mattaponi*, 591 S.E.2d at 96). Such a waiver must be "explicit and express." *Passaro v. Virginia*, 935 F.3d at 249. To date, Virginia's General Assembly has not abrogated Virginia's sovereign immunity with respect to suits brought under 42 U.S.C. § 1983. *See Jacob v. Coll. of William & Mary*, 495 F. Supp. 183 (E.D. Va. 1980), *aff'd*, 661 F.2d 922 (4th Cir. 1981); *Saphilom*, 2024 WL 4863296, at *4; *Jones v. Va. Commonwealth Univ.*, 2021 WL 51542, at *3 (E.D. Va. Jan. 6, 2021); *Ibrahaim v. Old Dominion Univ.*, 1989 U.S. Dist. LEXIS 18059, at *68–70 (E.D. Va. July 6, 1989).

Not only does sovereign immunity apply to a state agency, but it may also shield a state official when a suit is brought against him/her in her official capacity. *Jones*, 2021 WL 51542, at *3. That is because a suit brought against an individual in "her official capacity is . . . no different than a suit against the State itself." *Id.* (quoting *Will*, 491 U.S. at 71). Indeed, suits against state officials in their official capacities under § 1983 "are treated as suits against the State." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). The only exception is when a plaintiff seeks injunctive relief, specifically prospective relief, against a state official in their official capacity. *See id.* (citing *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

Here, Defendants argue that Defendant VSP is immune from suit under § 1983 because sovereign immunity applies to state agencies, such as VSP, and includes immunity from private suits under § 1983. Mem. Supp. 9. Defendants note that Plaintiff appears to conflate the different types of immunity and reiterate that both Defendant VSP and the Individual Defendants, in their official capacities, remain immune under current case law. Reply 6–7.

Plaintiff contends that VSP is not immune from suit under § 1983 because VSP exceeded the scope of its governmental function and did not act in good faith when it ratified its employee's defamatory statements against Plaintiff. Resp. Opp'n 9–10. However, in making these arguments, Plaintiff does not specify under which theory he is proceeding. *See* Resp. Opp'n 9–10.

The Court finds that Defendant VSP and the Individual Defendants are entitled to sovereign immunity. As explained above, Virginia has not waived its sovereign immunity as to claims under § 1983. *Jones,* 2021 WL 51542, at *3. Plaintiff has not identified, nor has the Court found, any recent legislation indicating that the Commonwealth of Virginia has carved out an exception to allow state agencies to be sued under § 1983. Thus, Defendant VSP is immune. Further, the Individual Defendants are immune from § 1983 lawsuits in their official capacity because Plaintiff does not seek prospective or injunctive relief. A claim which only seeks prospective or injunctive relief against a state official would permit Plaintiff to overcome sovereign immunity*, Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001), but instead, Plaintiff seeks $4,000,000 in monetary damages. Compl. 16. In addition, the Court finds Plaintiff's argument regarding Defendant VSP's actions exceeding the scope of its governmental function to be unavailing, as the question of whether an entity is engaged in a governmental function only applies to the sovereign immunity analysis for municipal corporations, not for county employees. *See Massenburg v. City of Petersburg*, 298 Va. 212, 218-19 (2019). Based on the foregoing, the Court finds that sovereign immunity applies to Defendant VSP and the Individual Defendants in their official capacity.[6]

---

[6] The Court need not address Defendants' Eleventh Amendment argument, as it has found that sovereign immunity applies to VSP and the individual Defendants in their official capacity. *See* Mem. Supp. 10.

2. Qualified Immunity

Plaintiff also brings a § 1983 claim against the Individual Defendants in their personal capacity.  Unlike official capacity claims, suits against state officials in their individual capacities "seek to impose individual liability . . . for actions taken under color of state law."  *Hafer*, 502 U.S. at 25.  The Court will next address whether qualified immunity shields the Individual Defendants from the § 1983 claim Plaintiff asserts against them in their personal capacities.

The doctrine of qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Wingate v. Fulford*, 987 F.3d 299, 310–11 (4th Cir. 2021).  The burden of establishing a qualified immunity defense is on the official asserting qualified immunity.  *Wingate*, 987 F.3d at 311; *Meyers v. Baltimore County*, 713 F.3d 723, 731 (4th Cir. 2013).  The protection of qualified immunity is "ample" for "all but the plainly incompetent or those who knowingly violate the law," *Blair v. Appomattox Cnty. Sch. Bd.*, 2024 WL 3165312, at *5 (W.D. Va. June 25, 2024), *aff'd in relevant part, rev'd in part*, --- F. 4th ---, 2025 WL 2249351, (4th Cir. 2025)  (quoting *Malley v. Briggs*, 475 U.S. 335, 335 (1986)), and the Fourth Circuit has previously held that "qualified immunity protects officials who make 'bad guesses in gray areas' about the constitutionality of their actions, while 'transgressing bright lines' creates liability."  *Id.* (quoting *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992)).

The Supreme Court, in *Saucier v. Katz*, created a two-step procedure for resolving qualified immunity claims.  533 U.S. 194, 201 (2001).  First, a court must decide if the plaintiff has sufficiently alleged a violation of a statutory or constitutional right.  *Id.*  Second, a court then decides if the right was "clearly established."  *Id.*  In *Pearson v. Callahan*, the Supreme Court held

that this two-step procedure is no longer mandatory but is "often appropriate." 555 U.S. at 236. Post-*Pearson*, it is now left to the sound discretion of the court to decide which of the two steps should be addressed first. *Id.*

The Individual Defendants contend that qualified immunity shields them from liability under § 1983 because Plaintiff failed to allege a violation of a constitutional right, specifically a procedural due process claim as it relates to Plaintiff's liberty interest in his reputation. Mem. Supp. 12. Plaintiff counters that the Individual Defendants forfeited any entitlement to qualified immunity through their intentional and reckless acts of knowingly creating and using false evidence against him. Mem. Opp'n 9.

The Court begins its analysis with whether Plaintiff has alleged a constitutional violation, as that issue is outcome determinative.

### a. Plaintiff Has Not Sufficiently Alleged a Constitutional Violation

At issue is whether Plaintiff has alleged a violation of a constitutional right with respect to his placement on the *Brady* list.[7] Defendants generally argue that Plaintiff does not allege a sufficient liberty interest violation because a plaintiff is required to allege more than an injury to reputation. Reply 8–9. Further, even if Plaintiff's placement on the *Brady* list was defamatory and sufficient grounds for a § 1983 action, Defendants note that they have no power over *Brady* lists, as they are maintained by the Commonwealth's Attorney's Office or U.S. Attorney's Office, thus creating a redressability issue for Plaintiff. *Id.* at 9 n.9.

---

[7] Even though Defendant's Motion to Dismiss addressed both Plaintiff's termination and his placement on the *Brady* list, Plaintiff's Complaint and Response in Opposition focus on the fact that "Defendants did not afford [Plaintiff] due process rights . . . to appeal the placement of his name on the *Brady* list." Resp. Opp'n 12; *see also* Compl. ¶¶ 45, 50. Thus, the Court shall address Plaintiff's placement on the *Brady* list. The Court notes, that even if the Court had considered termination, it would find that Plaintiff failed to state a claim because Plaintiff was afforded sufficient Due Process; indeed, Plaintiff was reinstated following a hearing on his termination. *See Sansotta v. Town of Nags Head*, 724 F.3d 533, 540 (4th Cir. 2013) (noting that a to succeed on a liberty procedural due process claim, a plaintiff must allege: (1) he had a constitutionally cognizable liberty interest; (2) some type of state action deprived him of his liberty interest; and (3) his right was deprived absent sufficient process); *see* Compl. ¶¶ 25, 28–30.

There is a constitutional right to "procedural due process when governmental action threatens a person's liberty interest in his reputation and choice of occupation." *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 307 (4th Cir. 2006) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 573 & n.12 (1972)). "It should be noted that the interest protected is 'not to remain employed . . . but . . . merely to "clear [one's] name" against unfounded charges." *Johnson v. Morris*, 903 F.2d 996, 999 (4th Cir. 1990) (quoting *Boston v. Webb*, 783 F.2d 1163, 1166 (4th Cir. 1986)). Relatedly, an "injury to reputation alone does not deprive an individual of a constitutionally protected liberty interest." *Doe v. Rector & Visitors of George Mason Univ.*, 132 F. Supp. 3d 712, 722 (E.D. Va. 2015) (quoting *Tigrett v. Rector & Visitors of Univ. of Va.*, 290 F.3d 620, 628 (4th Cir. 2002)); *Doe v. George Mason Univ.*, 2020 WL 14000928, at *15 (E.D. Va. Apr. 23, 2020). "[A]n employee's interest in 'reputation alone, apart from some more tangible interests such as employment,' is insufficient to invoke the procedural protection of the Due Process Clause." *Id.* (quoting *Paul*, 424 U.S. at 701). There must be "some more tangible interests," which is examined by the "stigma-plus" test. *Id.* (quoting *Paul v. Davis*, 424 U.S. at 701). The Fourth Circuit has required that, in order to deprive an employee of a liberty interest, a public employer's stigmatizing remarks must be "made in the course of a discharge or significant demotion." *Ridpath*, 447 F.3d at 309 (citing *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 172 n. 5 (4th Cir.1988)). Thus, a plaintiff states a reputation liberty interest claim when he alleges that the charges made against him: "(1) placed a stigma on his reputation; (2) were made public by the employer; (3) were made in conjunction with his termination or demotion; and (4) were false." *Sciolino v. City of Newport News*, 480 F.3d 642, 646 (4th Cir. 2007) (citing *Stone,* 855 F.2d at 172 n. 5).

Here, the Individual Defendants argue that Plaintiff failed to allege both that the statements were made public or that Plaintiff experienced a termination or demotion in conjunction with these statements. Mem. Supp. 12. Plaintiff's response does not directly address these specific arguments, *see* Resp. Opp'n 9–12, but Plaintiff generally argues that qualified immunity is not appropriate because the Individual Defendants acted intentionally and recklessly. Resp. Opp'n 9.

While Plaintiff is correct that a defendant may not rely on qualified immunity if he or she acts intentionally or recklessly, that only applies should a defendant "act to violate the law with actual knowledge, deliberate ignorance, or reckless disregard of a risk to a *constitutional . . . right*." *United States ex rel. Citynet, LLC v. Gianto*, 962 F.3d 154, 159–160 (4th Cir. 2020) (emphasis added) (citing *Washington v. Wilmore*, 407 F.3d 274, 283–84 (4th Cir. 2005)). Therefore, Plaintiff's argument is relevant only when he has alleged a violation of a constitution right, which as the Court describes below, he has not.

The Court finds that Plaintiff's claim falters in establishing a demotion sufficient to support a violation of his liberty interest. *Sciolino*, 480 F.3d at 646. As stated above, to sustain his claim for a due process deprivation of his liberty interest, Plaintiff must allege his employer made stigmatizing remarks in the course of a discharge or significant demotion. *Ridpath*, 447 F.3d at 314. Put differently, "some damage to [plaintiff's] employment status must have resulted from publication" of the stigmatizing remarks. *Johnson*, 903 F.3d at 999. The Fourth Circuit defined a significant demotion as "an offer of a job far beneath the one he had, where being so demoted is to be effectively excluded from one's trade or calling as by being thrown out on the street." *Ridpath*, 447 F.3d at 314 (citing *Lawson v. Sheriff of Tippecanoe County*, 725 F.2d 1136, 1139 (7th Cir.1984)). While the Fourth Circuit has found that such a significant demotion "may include the reassignment of an employee to a position outside his field of choice," *id.* at 313-314, this may

16

not always be the case when a plaintiff "remains employed." *Johnson,* 903 F.3d at 999 (quoting *Hershinow v. Bonamarte*, 735 F.2d 264, 266 (7th Cir. 1984) (agreeing that "when a police officer is suspended but not discharged he 'cannot complain that he has been made unemployable; he remains employed.'")).

Indeed, the Court recognizes that nearly every court faced with this same question regarding a police officer's placement on a *Brady* list has found that there has been no violation of said plaintiff's liberty interest. *See, e.g.*, *Roe v. Lynch*, 997 F.3d 80, 85–86 (1st Cir. 2021) (finding no constitutional violation because a plaintiff may not "have a protected interest in something that government officials grant or deny in their discretion"—here the prosecutor's discretionary judgment to place plaintiff on the *Brady* list.  Neither can a plaintiff allege a reputational harm where the "stigma and [employment] harm . . . derive from distinct sources") (first citing *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005); and then quoting *URI Student Senate v. Town of Narragansett*, 631 F.3d 1, 9 (1st Cir. 2011))); *Wormuth v. Prince George's Cnty.*, 2025 WL 958568, at *8 (D. Md. Mar. 31, 2025) ("[M]erely recommending that Plaintiffs be placed on the [Brady] list does not give rise to a stigma-plus claim because the recommendation is not a 'statement' that has been disseminated or published."); *Aquino v. City of Charlotte*, 2022 WL 2334985, at *3 (W.D.N.C. June 28, 2022) (considering that the *Giglio* letter was not issued in conjunction with plaintiff's discharge or significant demotion and that the letter was issued by a different government actor); *Lynem v. Worthy*, 2022 WL 995562, at *7–9 (E.D. Mi. Mar. 31, 2022); *Pstoa v. New Hanover Township*, 2021 WL 6136930, at *16 (E.D. Pa. Dec. 29, 2021) (finding no violation of plaintiff's constitutional liberty interest because plaintiff voluntarily resigned); *LaCross v. Clarkson*, 2019 WL 2571274, at *6–7 (D. Or. Mar. 22, 2019) ("Although placement on a *Brady* list and its consequences may, in some circumstances, be sufficiently

17

egregious . . . . [plaintiff] admits he remains employed . . . and therefore this Court finds that he has not suffered deprivation of a liberty interest."); *Heidt v. City of McMinnvile*, 2016 WL 7007501, at *11 (D. Or. Nov. 29, 2016). Many courts' reasoning hinged on whether plaintiff remained employed and whether he had suffered consequences, like being unable to transfer to another police department. *See, e.g.*, *LaCross*, 2019 WL 2571274, at *7 ("[Plaintiff] has also not alleged that he has tried to transfer to another police department and been unable to do so."); *Heidt*, 2016 WL 7007501, at *11 (finding no constitutional violation because plaintiff remains employed following his reinstatement and has not alleged that he has been unable to transfer to another police agency based on his placement on the *Brady* determination).

In *Lynem*, the district court for the Eastern District of Michigan found that the plaintiff failed to plead a liberty interest after being placed on the *Brady* list, despite having been acquitted of misconduct. *Lynem*, at *7–8. The district court came to its conclusion because plaintiff remained employed following his acquittal and had not pointed to any "'tangible' injury apart from reputational harm," following his acquittal. *Id.* at *9. Because plaintiff failed to allege that his placement on the *Brady* list disturbed his acquittal in any way apart from reputational harm, the *Lynem* court found that the allegations failed to withstand the stigma-plus test. *Id.*

In this case, Plaintiff similarly returned to work following his successful appeal of his termination and remains employed with VSP. Compl. ¶ 30. Though Plaintiff did not return to the exact same position as before—he now works ten miles away from his prior assignment—Plaintiff appears to have successfully transferred between offices. *Id.* Aside from these details, Plaintiff does not provide any allegations to support that his new position is a "significant demotion . . . tantamount to an outright discharge." *Ridpath*, 447 F.3d at 309. Plaintiff describes the *Brady* list's stigma and the consequences he faces being associated with the list; however, he fails to allege

18

how placement on this list has resulted in injury beyond mere reputational harm. Like the plaintiff in *Lynem*, Plaintiff here has failed to allege that placement on the *Brady* list disturbed the outcome of the hearing that reversed his termination for misconduct. Because lingering reputational harm and a slightly longer commute, alone, are insufficient injuries to establish a significant demotion necessary to satisfy the stigma-plus test, Plaintiff's procedural due process claim fails.

The Court finds that Plaintiff does not assert a cognizable reputation liberty interest claim due to his failure to allege that he suffered a significant demotion in conjunction with his placement on the *Brady* list. Accordingly, qualified immunity shields the Individual Defendants, in their personal capacity, from Count I, and the Court will dismiss that claim against them.

### b. The Court Need Not Consider Whether Any Right Was Clearly Established

Because the Court has found that Plaintiff failed to allege a constitutional violation, as described *supra* Part IV.A.2, the Court need not address the second prong of the qualified immunity analysis and assess whether the right was "clearly established." *Saucier*, 533 U.S. at 201. As a result, the Court finds that the Individual Defendants are entitled to qualified immunity with respect to Plaintiff's § 1983 due process claim.

### B. The Court Will Decline to Exercise Supplemental Jurisdiction Over Remaining State Law Claims (Counts II, III and IV)

Federal district courts have supplemental jurisdiction over state law claims when those claims "form part of the same case or controversy" as a federal claim. 28 U.S.C. § 1367(a). Supplemental jurisdiction is not automatic, and district courts may decline to exercise supplemental jurisdiction over state law claims if the court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). Supplemental jurisdiction is a discretionary doctrine and district courts "enjoy a wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan v.*

*Cahill*, 58 F.3d 106, 110 (4th Cir. 1995). However, both the Fourth Circuit and the Supreme Court favor dismissing state law claims if the federal claims are extinguished prior to trial. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); *Banks v. Gore*, 738 F. App'x 766, 773 (4th Cir. 2018) ("Generally, when a district court dismisses all federal claims in the early stages of litigation, it should decline to exercise jurisdiction over any remaining pendent state law claims by dismissing those claims without prejudice." (first citing *Gibbs*, 383 U.S. at 726; and then citing *Carnigie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988))).

When determining whether to exercise its discretion to retain jurisdiction, a court considers "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Shanaghan*, 58 F.3d at 110. However, "when all federal claims are dismissed early in the litigation, the justifications behind pendent jurisdiction—'considerations of judicial economy, convenience and fairness to litigants'—are typically absent" and weigh against exercising supplemental jurisdiction. *Alexandria Resident Council, Inc. v. Alexandria Redevelopment & Hous. Auth.*, 11 F. App'x 283, 287 (4th Cir. 2001) (quoting *Gibbs*, 383 U.S. at 726).

At this juncture, the sole federal claim has been extinguished prior to trial, and the remaining claims rely entirely upon Virginia state law. Therefore, the aforementioned factors uniformly favor dismissal. The remaining counts do not directly involve federal policy and are entirely state law claims. Therefore, allowing a Virginia state court to address state law matters "would best serve judicial economy." *Thornton v. Piedmont Reg'l Jail Auth.*, 2025 WL 888417, at *12 (E.D. Va. Mar. 21, 2025). Given that Fourth Circuit precedent "evince[s] a strong

20

preference that state law issues be left to state courts in the absence of diversity or federal question jurisdiction," the Court will decline to exercise supplemental jurisdiction and will dismiss the remaining counts without prejudice. *Arrington v. City of Raleigh*, 369 F. App'x 420, 423–24 (4th Cir. 2010); *Johnson v. Exeter Fin. LLC*, 2024 WL 4336615, at *4–5 (E.D. Va. Sept. 27, 2024).

## V. CONCLUSION

For the foregoing reasons, Plaintiff fails to state a § 1983 claim against Defendants. Thus, the Court will grant Defendants' Motion to Dismiss as to Count I, with prejudice. Further, the Court will exercise its discretion to dismiss the remaining state law claims, Counts II, III, and IV, without prejudice.

An appropriate Order will accompany this Memorandum Opinion.

_____ /s/
Roderick C. Young
United States District Judge

Date: September 18, 2025
Richmond, Virginia

21